IN THE

# SUPREME COURT OF JUDICATURE

OF THE

# STATE OF INDIANA,

### AT INDIANAPOLIS, NOVEMBER TERM, 1872, IN THE FIFTY-SEVENTH YEAR OF THE STATE.

————◆————

## MOOKLAR *v.* LEWIS.

PROMISSORY NOTE.—*Failure of Consideration.*—When it is shown that a promissory note was given for an article that has proved to be wholly without value, this will sustain a plea of no consideration, as well as a plea of total failure of consideration.

MOTION FOR A NEW TRIAL.—*Evidence.*—In a motion for a new trial on account of the admission or exclusion of improper evidence, the attention of the court must be called to the particular evidence admitted or excluded.

SAME.—That a general verdict for the defendant is contrary to, or in conflict with, special findings, or that special findings do not support the allegations of the answer, or are in conflict with the same, or are inconsistent with the general verdict, is not a reason for a new trial.

APPEAL from the Marion Common Pleas.

PETTIT, C. J.—This was a suit brought by Mooklar, assignee of two promissory notes, against Lewis, the maker. The answer was in three paragraphs.

"1st. The defendant says that Hopkins & Mooklar, the payees and assignors of the notes sued on, were the owners of a certain patent brick machine, which they were selling in Marion county, Indiana; that the Indianapolis Machine Brick Company were then and there a corporation, engaged at said county in manufacturing brick; that said defendant was president of said company and corporation, as said Hopkins & Mooklar well knew; that the consideration of the notes sued on was a machine for making brick, which said Hopkins & Mooklar sold to said corporation, and not to defendant; that defendant never was indebted to said Hopkins & Mooklar in any sum whatever; that when said notes came to be executed, defendant, by mere mistake, and by the direction of said Hopkins & Mooklar, signed said notes as they appear to be signed, this defendant and said Hopkins & Mooklar then saying and believing that said signature was the signature of said corporation, the said Machine Brick Company, and not the signature of this defendant, said notes, as to this defendant, being given without any consideration whatever; wherefore defendant demands judgment." The appellant says, both in his abstract and brief, that a demurrer was sustained to this paragraph, but this is not true by the record.

"2d. Defendant says that said notes were executed and delivered to the plaintiff by defendant without any consideration.

"3d. That the consideration of the notes was the assignment to the Indianapolis Machine Brick Company of the right to use Gard's Patent Brick Machine; that at the time the notes were executed, the payees, Mooklar & Hopkins, who were the agents of the owners of said patent right, assigned said right for Marion county, Indiana, to said Machine Brick Company; that while acting as such agents, they represented to said defendant and to said Brick Company, (1) that said machine and patent right were of great value; (2) that the capacity of said machine was such that twenty-five thousand bricks could be manufactured therewith per day with ease, with one machine, with steam power, and

fifteen thousand bricks per day with horse power; (3) that said machine was so strong and well built that it was not liable to break or get out of order, and that stone pebbles or boulders passing through the same with the clay, did no other damage than breaking two small wooden pins which held the knife, and which could be replaced with ease, and with little or no expense; (4) that the quality of the brick which said machine would turn out would be much superior, in smoothness and compactness, to those made by hand and with other machines, and that in quality said brick were nearly equal to pressed brick; (5) that the brick manufactured by said machine would dry out ready for burning in one-half the time required for hand-made brick; (6) that twenty-five per cent. less of fuel would be required to burn said brick than if they were made by hand; (7) and that the surface clay on the premises owned by said Indianapolis Machine Brick Company, near Indianapolis, could be worked with facility and profit, and good merchantable brick made therefrom with said machine, at a cost of fifty per cent. less than the cost of making brick by hand; all of which representations so made by said agents were false and untrue; but defendant says he believed the same to be true, and was misled by them, and induced to execute the note sued on; that said machine has failed in every particular to perform as said Hopkins & Mooklar represented that it would perform; that the same has been a constant source of annoyance and expense on account of its defects and failures, and has proved to be utterly worthless for the purpose for which the same was purchased, procured, and recommended on the false representations aforesaid. Wherefore the defendant says the consideration of said notes sued on has failed."

The reply was a general denial.

Trial by jury, verdict for defendant, together with the following interrogatories put to and answered by the jury:

"1st. After Hopkins & Mooklar had offered to sell to Lewis the right to use Gard's Patent Brick Machine in Marion county, for three thousand dollars, did not Lewis re-

Mooklar *v.* Lewis.

quest ten days in which to send to Covington, Kentucky, and Chicago, Illinois, to investigate the merits and value of said patent? Answer. Yes.

" 2d. After said proposition had been made, and before accepting the same, did not Lewis visit Covington, Kentucky, in company with T. J. Vater, an experienced brick maker, for the purpose of examining into the quality and value of said machine? Answer. Yes.

" 3d. After his return from Covington, Kentucky, and within said ten days, did not Lewis send said Vater to Chicago, Illinois, to make still further examination into the merits of said machine? Answer. Yes.

" 4th. Did not Lewis and Vater see the brick which had been made by said Gard's Patent Brick Machine, in Covington, Kentucky? Answer. Yes.

" 5th. Did not Vater examine the brick which had been made by said machine at Chicago, Illinois? Answer. Yes.

" 6th. Did he not learn that more than three million brick had been made on said machine in Chicago in the year 1863? Answer. Yes.

" 7th. Did not Lewis see one of said machines in operation in the court-house yard in Indianapolis, before he went to Covington, Kentucky? Answer. Yes.

" 8th. After he had concluded his investigations and heard the report of Vater, did he not accept the proposition of Hopkins & Mooklar, by telegram to Louisville, Kentucky? Answer. Yes.

" 9th. Did Lewis, in making said purchase, rely solely on the representations of Hopkins & Mooklar? Answer. Not wholly, but mainly, on such representations.

" 10th. Did he not rely mainly on his own judgment and the judgment of Vater, in making said purchase? Answer. We think not."

And to the interrogatories propounded at the instance of the defendant, they answered as follows:

" 1st. Was not the consideration of the notes sued on the sale to the Machine Brick Company of the right to use

Gard's Patent Brick Machine in Marion county, Indiana? Answer. Yes.

"2d. Did not Mooklar & Hopkins make and cause to be made to Lewis, the maker of the notes, the representations in the third paragraph of the answer set out? Answer. Yes.

"3d. Were said representations true or untrue? and if any were true, which were? Answer. Not true in any part.

"4th. Did the machine made according to Gard's patent operate according to the representations of Mooklar & Hopkins? Answer. No.

"5th. How much was the right to use Gard's Patent Brick Machine worth when the notes sued on were executed? Answer. Nothing.

"7th. Were not the makers of the notes sued on induced to execute the same by the untruthful representations of Mooklar & Hopkins and their agents? Answer. Yes."

And thereupon plaintiff moved the court for judgment in his favor on the pleadings and answers to interrogatories, for the principal and interest due on the notes sued on, notwithstanding the general verdict, because:

"1st. The allegations of the complaint are admitted.

"2d. The special findings of the jury, in answer to the interrogatories propounded to them, do not sustain the second paragraph of the answer, being the answer of no consideration.

"3d. The third paragraph of the answer does not aver that the representations were made fraudulently, or with a dishonest purpose, but admits by its silence that they were made in good faith, honestly, and in the full belief of their truth by the persons making them.

"Said paragraph does not show that the representations were such that the defendant had a right to rely on them, or that they were other than *simplex commendatio,* honest praise of the patent right by the vendors.

"Said paragraph shows no offer to return or reassign said patent right, and does not show the same to be of no value;

and the facts set out in said paragraph are no bar to the action.

"4th. The special findings show that the defendant had full opportunity to ascertain the truth or falsehood of the representations complained of, and that he did in fact make and cause to be made an investigation into the quality and merits of said patent right, before purchasing the same."

This motion was overruled by the court.

There is no material discrepancy between the general verdict and the answers to the interrogatories. They show that the machine for which the notes were given was of no value, worth nothing, and that the false representations set up in the third paragraph were made. All three paragraphs of the answer were standing, and issue had been taken upon them by reply of general denial; and as there was evidence tending to show that the notes were executed for the consideration of a sale to the Indianapolis Brick Machine Company, by Lewis, as president of the company, the general verdict was not contrary to either the law or the evidence, and the verdict can properly be sustained under the issue taken on the first paragraph of the answer. The first interrogatory and the first instruction asked by the defendant have clear reference to this issue.

The jury found generally for the defendant upon all the issues. Among them was a plea of no consideration. Do the answers to interrogatories or "special findings" overrule or conflict with the general verdict upon this issue? The jury found that the notes were given for a patent right that was utterly worthless. The consideration was something worse, then, than merely "fraudulent or trifling;" it was worthless. In *Dickinson* v. *Hall*, 14 Pick. 217, it was held that a plea of no consideration was sustained where the nominal consideration was a worthless patent right, not profitable and not useful. The court say that although the plaintiff might have purchased and sold the supposed patent right, thinking it to be valuable property, still he could not recover in this action, for the defence did not rest on the

Mooklar *v.* Lewis.

ground of fraud, but on the ground that the defendant had received no value, and his promise was *nudum pactum.* So in *Perley* v. *Balch,* 23 Pick. 283, it was held that if the property was of no value, whether there was any fraud or not, the note was *nudum pactum.* But if of any value to the seller, the buyer would be bound by the contract., If of no value to any one, it cannot be the basis of a bargain. So in the case at bar, the " right" for which the notes were given was found by the jury, specially.as well as generally, to be worthless at the time of the alleged purchase; that is to say, of no value to any one.

In *Johnson* v. *Titus,* 2 Hill N. Y. 606, the court cite the case of *Perley* v. *Balch,* with commendation, while at the same time holding that mere inadequacy of consideration is no defence.

So Parsons on Notes and Bills, vol. 1, 207, states the law to be, that it is always a good defence that the thing sold is wholly without value.

So that in this case, both the general verdict and special findings sustain the plea of no consideration, as well as the plea of total failure of consideration. The case of *Wheelock* v. *Barney,* 27 Ind. 462, does not in any way conflict with the cases above cited. In *Morehead* v. *Murray,* 31 Ind. 418, the second paragraph of answer was similar to the third in this case. The note sued on in that case was given for trees and vines which were received by the defendant upon the false representation that they were, according to a prior agreement, to be of·a certain character, and the defendant set them out in the full belief that they were as represented; while, in fact, the trees and vines were not in good condition, but were wholly worthless, and the consideration of the notes sued on had wholly failed. It will be observed that there is in this case no charge of fraudulent conduct on the part of the plaintiff, or even.of knowledge that the representations were false. The court say: "There was no error in overruling the demurrer to the second paragraph..of the

answer. It denied that the trees and vines were of any value whatever." The case fully sustains the third paragraph of the answer in this case, and is in conformity with the cases we have cited above.

The appellant (plaintiff below) moved the court for a new trial, for the following reasons:

First. Because the court erred on the trial in admitting, over plaintiff's objection, illegal, incompetent, and irrelevant testimony to the prejudice of plaintiff.

Second. Because, on the trial, the court excluded competent, relevant, and legal evidence, over the plaintiff's objections and exceptions, to plaintiff's prejudice.

Third. Because the court erred in the written instructions given to the jury, the same being improper and illegal, over plaintiff's exception and objection.

Fourth. Because the court erred in refusing legal and proper instructions asked by the plaintiff, to plaintiff's prejudice.

Fifth. Because the verdict is contrary to law.

Sixth. The verdict of the jury is contrary to the evidence.

Seventh. The general verdict is contrary to, and in conflict with, the special findings.

Eighth. Because the special findings do not support, and are inconsistent with, the answer.

Ninth. Because the special findings are inconsistent with the general verdict, and are in conflict with it.

This motion was overruled, and this ruling is assigned for error.

The first, second, third, and fourth reasons are, as we have often held, insufficient, because they do not point out or refer to the evidence improperly admitted or refused, or the instructions improperly given or refused. On a motion for a new trial, the court's and the opposite party's attention should, directly and specifically, be called to what evidence was improperly admitted or refused, and to what instruction was improperly given or rejected.

We have already disposed of the fifth and sixth reasons

for a new trial. The seventh, eighth, and ninth are no reasons for a new trial. 2 G. & H. 211, sec. 352.

There was no error in the action of the court below.

The judgment is·affirmed, at the costs of the appellant.

*J. T. Dye* and *A. C. Harris,* for appellant.

*A. G. Porter, B. Harrison,* and *C. C. Hines,* for appellee.